492 F.2d 243
 CAROLINA FREIGHT CARRIERS CORPORATION for the Use and
Benefit of Liberty Mutual Insurance Company, Appellant,
v.
PITT COUNTY TRANSPORTATION COMPANY and Old Republic
Insurance Company, Appellees.
 No. 73-1812.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 8, 1973.
Decided Feb. 21, 1974.
 
 Nathan H. Smith, Richmond, Va. (Sands, Anderson, Marks & Clarke, Richmond, Va., on brief), for appellant.
 Robert E. Payne, Richmond, Va. (Alexander H. Slaughter, McGuire, Woods & Battle, Richmond, Va., on brief), for appellees.
 Before WINTER, BUTZNER and FIELD, Circuit Judges.
 FIELD, Circuit Judge:
 
 
 1
 Finding an indemnification provision in a lease of motor carrier equipment to be violative of a pertinent regulation of the Interstate Commerce Commission, the district court granted defendant's motion for judgment on the pleadings and the plaintiff has appealed.
 
 
 2
 The facts are not in dispute. Carolina Freight Carriers Corporation (Carolina) leased a tractor-trailer truck accompanied by its driver from Pitt County Transportation Company (Pitt). During the rental period the driver allegedly parked improperly on a highway wayside and the truck moved backwards striking one Robert Powers and his infant daughter. The infant was killed and Powers was seriously injured. Thereafter, Carolina's insurer compromised the claims by payment of $50,000, and Carolina now seeks indemnity on behalf of its insurer from Pitt, the lessor.[1]
 
 
 3
 The issue presented to the court below was whether Pitt owed a duty to indemnify Carolina under the provisions of the lease, a copy of which was incorporated in the complaint as an exhibit thereto and which reads in pertinent part as follows:
 
 
 4
 Carolina Freight Carriers Corporation, Lessee, hereby acknowledges receipt of and leases from Pitt County Trucking Co., Lessor, of Farmville, North Carolina * * * for its exclusive possession, control, and use, and assumes complete responsibility in respect thereto for the duration of this Motor Vehicle Trip Agreement, the following vehicular equipment to be used by said lessee beginning at 1 PM o'clock on 6/19/69 in its interstate service to transport merchandise.
 
 
 5
 2. LESSEE will assume and pay all costs of public liability and property damage insurance on the vehicle while operating at the direction of the Lessee and provide insurance covering cargo being transported at the direction of the Lessee. However, in the event any loss or damage to cargo or property damage or personal injury to any third person takes place by reason of negligence or dishonesty of the owner, its Agents, servants, or employees, then the owner does hereby agree to assume and be fully responsible for any such damage and, in the event payment shall be made by the Lessee herein, Lessor does hereby agree to indemnify the Lessee and hold the Lessee harmless for any and all claims. In the event that Lessee's insurance company is required to make payment therefor, then, and in that event, the insurance company shall be subrogated to the rights of the Lessee against the Lessor herein.
 
 
 6
 5. LESSOR agrees that during the term of this lease the motor vehicle equipment described above shall be under such control of the LESSEE as required by the rules and regulation of the Interstate Commerce Commission and for the limited purpose of safety to the public and safe delivery of shipment.
 
 
 7
 7. LESSOR agrees to be fully responsible for the above described equipment maintaining said equipment in accordance with the 'safety' regulations and specifications set forth by the Interstate Commerce Commission to keep said equipment in good operating condition and appearance; to maintain such records as shall be required by the Interstate Commerce Commission, Government, State, or any other regulatory authority. LESSOR agrees to provide at his sole and own expense all necessary oil, gasoline, fuel, tires, repairs, accessories, and/or other items required for the operation and maintenance of said vehicle during the term of this lease. LESSEE may require LESSOR to store his equipment when not in use on the LESSEE'S premises.
 
 
 8
 9. LESSOR agrees that during the term of this lease:
 
 
 9
 (a) He will be solely responsible for the payment of his own Social Security Taxes, Old Age Benefits, Unemployment compensation, Taxes, Workmen's Compensation Insurance, Federal Income Taxes, license fees, and payment of all payroll deductions and taxes for employees furnished by the LESSOR.
 
 
 10
 (b) To pay fines, costs and expenses incurred in the operation of the equipment leased herein in the performance of this lease are to be borne by and be the sole responsibility of the LESSOR.
 
 
 11
 (c) To indemnify LESSEE against loss or liability, if any resulting from the injury or death of the driver or drivers of the vehicle above described or any helpers employed by such drivers in connection with the loading or unloading of said vehicles.
 
 
 12
 (d) To indemnify LESSEE against any loss or damage resulting from the negligence, incompetence or dishonesty of said drivers or helpers.
 
 
 13
 (e) To indemnify LESSEE against any loss or damage to or destruction of the trailer or other such equipment of the LESSEE towed by the LESSOR or his employee.
 
 
 14
 (f) To indemnify the LESSEE against any loss resulting from claims brought against the LESSEE for any property damage and bodily injury sustained by the public while the tractor is detached from a trailer.
 
 
 15
 11. The LESSOR shall perform this contract in a safe, competent and workmanlike manner and shall be responsible to the LESSEE for complying and together with his employees, agents and servants shall comply with all applicable requirements of federal, state and local government including but not limited to the rules and regulations of the Interstate Commerce Commission.
 
 
 16
 12. The LESSOR shall at its expense employ all necessary drivers, driver's helpers, and laborers who shall be experienced, competent, and qualified to carry out work to be performed by the LESSOR under this contract. Such employees shall also be qualified under and meet all the requirements of applicable federal and state laws and municipal ordinance and the rules and regulations of the Interstate Commerce Commission and other regulatory authorities.
 
 
 17
 18. This is the entire agreement of the parties. No alteration, amendment or future understanding shall be binding unless in writing and signed by both parties. This agreement shall be governed by the laws of the State of Horth Carolina. This Motor Vehicle Equipment Lease supercedes and cancels all prior agreements and leases entered into by the parties.
 
 
 18
 In its answer to the complaint Pitt did not dispute the execution or terms of the lease agreement, but alleged that the provisions with respect to indemnification and the responsibility of Pitt are unenforceable since they are contrary to the regulations of the Interstate Commerce Commission. The relevant regulatory section, 49 C.F.R. 1057.4, reads:
 
 
 19
 '(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:
 
 
 20
 (4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease or other arrangement, * * *.'Although acknowledging that North Carolina law, designated as controlling in the agreement, recognizes the validity of such an indemnification provision,[2] the district judge concluded that the effect of the provision was to relieve the lessee from responsibility for damages to third parties and, accordingly, it was 'violative of the spirit and letter' of the federal regulation and therefore unenforceable.
 
 
 21
 In all deference, we think the district court misread the lease agreement for there is nothing in it which purports to relieve Carolina from any responsibility to third parties for damages resulting from the operation of the leased equipment. On the contrary, the agreement specifically provides that Carolina was taking exclusive possession and control of the equipment and assuming 'complete responsibility in respect thereto.' Recognizing the regulatory obligations, the instrument states that the equipment should be under 'the control of the LESSEE as required by the rules and regulations of the Interstate Commerce Commission' for the purpose of safety to the public.
 
 
 22
 Nor do we find the indemnification provision violative of either the spirit or letter of the I.C.C. regulation. 'The use of non-owned equipment by arthorized carriers is not illegal, either under the Act or the rules under consideration,' American Trucking Assns. v. United States, 344 U.S. 298, 303, 73 S.Ct. 307, 311, 97 L.Ed. 337 (1953), and the right of a carrier to augment its equipment by a lease arrangement such as we have before us is specifically authorized by 49 U.S.C. 304(e), and the regulations, 49 C.F.R. 1057.1-1057.6.[3] While such lease arrangements must, of course, be in bona fide compliance with the regulations, which were promulgated primarily for the protection of the public we agree with the Fifth Circuit that there is nothing in the language of the regulations 'which would prohibit two freely contracting parties from determining, as between themselves, which party will ultimately bear the costs of damages done to a third person.' Allstate Insurance Co. v. Alterman Transport Lines, Inc., 465 F.2d 710, 713 (5 Cir. 1972).
 
 
 23
 In granting defendant's motion, the court below placed primary reliance on the case of Alford v. Major, 470 F.2d 132 (7 Cir. 1972). We, however, do not find Major persuasive for thr reason, among others, that the lessee in that case conceded a prima facie violation of the regulation in that the lessor had, in fact, retained full custody and control over the truck and driver during the term of the lease. Nor is the conclusion we reach discordant with our decision in Carriers Insurance Exchange v. Truck Insurance Exchange, 310 F.2d 653 (4 Cir. 1962), where at trial there was abundant evidence that the parties 'used the written lease to give the appearance of compliance with the law while actually ignoring it, * * *.' The basis of that decision was succinctly stated:
 
 
 24
 'In short, the parties deliberately entered into a transaction in violation of the law and of the regulations which had been promulgated to insure the safe transportation of a dangerous substance for the protection of the general public.' P. 657.
 
 
 25
 Since there is nothing in the indemnification provision facially violative of the Commission's regulations, it was error to grant defendant's motion for judgment on the pleadings. The judgment of the district court is reversed and the case remanded for further proceedings consistent herewith.
 
 
 26
 Reversed and remanded.
 
 
 
 [1]
 For the purpose of clarity, this opinion will refer to the parties as 'Carolina' and 'Pitt.'
 
 
 [2]
 S & N Freight Line, Inc. v. Bundy Truck Lines, Inc., 3 N.C.App. 1, 164 S.E.2d 89 (1968); Newsome v. Surratt, 237 N.C. 297, 74 S.E.2d 732 (1953)
 
 
 [3]
 The operation of equipment incident to such a lease by a person other than a regular employee of the lessee is recognized and countenanced by 49 C.F.R. 1057.4(e)