130 N.J. Super. 290 (1974)
326 A.2d 114
GORDON LEASING CO., PLAINTIFF,
v.
NAVAJO FREIGHT LINES, DEFENDANT, AND RANCH & FARM LINES AND RICHARD WEBB, DEFENDANTS AND THIRD-PARTY PLAINTIFFS,
v.
HERBERT J. KRAUSE, JOSEPH F. STRUNESKI, GENERAL EXPRESSWAYS, INC. AND SEABOARD SURETY CO., THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, District Court  Somerset County.
September 26, 1974.
*291 Mr. Richard G. O'Brien for defendant and third-party plaintiff (Messrs. Bowers, Rinehart, Murphy & O'Brien, attorneys).
Mr. William D. Surdovel for defendant and third-party defendant (Messrs. Conaghan, Surdovel & Scheurer, attorneys).
GAYNOR, J.C.C.
This case involves the application of an indemnification provision contained in a so-called "trip lease" covering the use of a motor truck while engaged in the transportation of goods in interstate commerce. The issue before the court is whether such provision whereby the lessor indemnifies the lessee for any loss resulting from the use of the vehicle is unenforceable as being contrary to public policy as expressed in regulations promulgated by the Interstate Commerce Commission providing in such cases for assumption of all liability by the lessee. Although the subject of conflicting decisions in other jurisdictions, this question is novel in New Jersey.
On June 7, 1969 Ranch & Farm Lines Nonstock Cooperative Marketing Association, Inc. (hereinafter Ranch or lessor), *292 the lessee, of a tractor-trailer, with the right to re-lease, entered into a trip lease with Navajo Freight Lines and General Expressways, Inc. (hereinafter Navajo or Lessee) for the use of said tractor-trailer in the transportation of certain goods by lessee from South Kearney, New Jersey, to Cornhusker, Nebraska. While traveling on Route 22 in Green Brook, New Jersey, the tractor-trailer was involved in an accident resulting in damages to a vehicle owned by Gordon Leasing Co. A consent judgment against Navajo for the amount of such damages was entered and its claim against Ranch for indemnification was reserved, which claim is the subject of the present proceedings.
The trip lease provided for the payment of a flat rental charge, inclusive of the driver's wages; required the lessor to deliver and maintain the equipment in good working condition, to furnish all necessary fuel, tires and repairs for the operation of the vehicle as well as all other expenses incident to such operation, and also included the following terms:
The Lessor shall surrender full control, possession, and management of said equipment to the Lessee during the term of this lease which shall start at delivery of equipment and end with delivery of cargo at destination, and the Lessor further agrees to operate said equipment as directed by Lessee.

* * * * * * * *
It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION. It is agreed that Lessor will carry acceptable Public Liability and Property Damage insurance. Lessor agrees to reimburse and otherwise indemnify Lessee for any and all losses sustained by Lessee resulting from the use of the aforesaid equipment.

* * * * * * * *
Lessor hereby agrees further to maintain his equipment in a good and efficient manner, observe all safety and other requirements of the I.C.C. and all other regulatory bodies having jurisdiction and to indemnify carrier against any losses in connection with this operation.
*293 In opposing lessee's claim for indemnification under the above terms of the trip lease, lessor contends that such provision is unenforceable as being contrary to public policy as expressed in I.C.C. regulations imposing liability upon the lessee. The specific regulations relied upon by the lessor, as set forth in 49 C.F.R. § 1057 entitled "Lease and Interchange of Vehicles" and adopted by the Interstate Commerce Commission pursuant to 49 U.S.C.A. § 304 et seq., are the following provisions governing truck leasing operations:
(a) Contract requirements. The contract, lease, or other arrangement for the use of such equipment:

* * * * * * * *
(4) Exclusive possession and responsibilities. Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the Lessee for the duration of said contract, lease or other arrangement. * * *
In response, lessee claims that the terms of the lease agreement providing for indemnification by the lessor are not repugnant to the intent of the regulations and are enforceable as a contractual arrangement between two assenting parties as to who will ultimately bear a loss arising from the use of a leased licensed carrier.
Consideration of the contentions of the respective parties requires reference to the purposes of the applicable regulations. A comprehensive discussion of the necessity for and objectives of the regulatory scheme is contained in the opinions in American Trucking Ass'ns v. United States, 344 U.S. 298, 73 S.Ct. 307, 97 L.Ed. 337 (1953), and Cox v. Bond Transportation, Inc., 53 N.J. 186 (1969). In brief, the regulations pertaining to truck leasing were designed to eliminate the detrimental effects of practices that had developed in the industry by the use of nonowned and exempted equipment in authorized carrier operations. Those practices included use of oral leases which resulted in difficulty in fixing the lessee's responsibility for accidents, failure to adequately and properly inspect and test the equipment used, and failure to *294 comply with operational safety requirements. Thus, the regulations require leasing agreements to be in writing, inspection by the lessee carrier upon transfer of possession of the nonowned equipment, familiarization of the driver of the leased vehicle with all the safety requirements, and the vesting in the lessee carrier by the terms of the contract of exclusive possession of the equipment for the duration of the lease. 49 C.F.R. § 1057.4.
As indicated, the precise question presented in the instant case has been the subject of conflicting decisions in other jurisdictions. One line of cases holds that such an indemnity clause in a trip lease is contrary to public policy and therefore unenforceable. Alford v. Major, 470 F.2d 132 (7 Cir.1972); Carolina Freight Carriers Corp. v. Pitt County Transportation Co., 358 F. Supp. 1177 (D. Ct. E.D. Va. 1973); Denver Midwest Motor Freight, Inc. v. Busboom Truck, Inc., 190 Neb. 231, 207 N.W.2d 368 (Sup. Ct. 1973). See also, Simmons v. King, 478 F.2d 857 (5 Cir.1973).
Other authorities uphold the indemnification provision on the grounds that there is no specific regulation prohibiting such an agreement between trucking companies; that actual control and custody is retained by the lessor, and that such an agreement between carriers does not affect the stated responsibility to the public. Newsome v. Surratt, 237 N.C. 297, 74 S.E.2d 732 (Sup. Ct. 1953); S. & N. Freight Line, Inc. v. Bundy Truck Lines, Inc., 3 N.C. App. 1, 164 S.E.2d 89 (Ct. App. 1968); Cooper-Jarrett v. J. Miller Corp., 70 Misc.2d 88, 332 N.Y.S. 2d 177 (Sup. Ct. 1972); Allstate Ins. Co. v. Alterman Transport Lines, Inc., 465 F.2d 710 (5 Cir.1972); Allstate Ins. Co. v. General Fire & Cas. Co., 348 F. Supp. 682 (D. Ct. E.D. Pa. 1972).
In Alford v. Major, supra, the indemnification clause in a trip lease was held unenforceable on the grounds that such a provision would permit the lessee "to circumvent the regulations' requirements that leased carriers exert actual control over the leased equipment and the borrowed drivers." The *295 court rejected the argument that the indemnification agreement should be enforced since the actual control of the truck remained with the lessor through the use of its driver, even though the lessee, consistent with the regulations, assumed full responsibility therefor to the general public, and that such an agreement was not against public policy inasmuch as the purpose of the regulations to assure financially responsible defendants to an injured member of the public was being accomplished. The court observed that while one of the objectives of the commission regulations was assurance to the public of responsible defendants, the paramount goal was highway safety and the prevention of traffic accidents from interstate truck leasing operations, and it concluded that this purpose would be overriden if the requirement for actual control of the leased equipment was circumvented by a contrary agreement.
A similar result was reached in Carolina Freight Carriers Corp. v. Pitt County Transportation Co., supra, wherein the court refused to accept the contention that the I.C.C. regulation was not operative because actual control of the leased vehicle was retained by the lessor and the parties had contractually provided for indemnification by the lessor. It deemed that such an approach "impliedly makes short shrift of the spirit and intent of the ICC regulation." In following Alford the court concluded that the regulation is mandatory in application and the contrary lease provision clearly violative thereof and unenforceable.
In Denver Midwest Motor Freight v. Busboom Truck, Inc., supra, the two lines of authority on this issue were considered and the court concluded that the holding in Alford provided the better solution, reasoning as follows:
The approval of indemnity provisions under the circumstances here might well adversely affect the safety of operation of vehicles and drivers as suggested in Alford. It would also inject into trip lease negotiations an added element of uncertainty and permit carriers to circumvent the clearly spelled out requirements that a lessee exert actual control over leased equipment and borrowed drivers. Varying *296 conditions and provisions of indemnity clauses when applied to varying factual situations introduce added elements of uncertainty and tend to blur lines of responsibility to the public between lessor and lessee and increase the prospect of litigation between carriers or their insurers without any corresponding benefit to the public. Insurance coverage of carriers might be adversely affected where tort liability of others is assumed by contract if such indemnification clauses were enforceable. If indemnity clauses in these circumstances are unenforceable, uncertainty is removed, statutory and regulatory provisions are fully enforced, and public policy is best served.
The contrasting decisions reason that an indemnification provision in a trip lease is valid and enforceable and not repugnant to the policy expressed in the I.C.C. regulations, because such an agreement is not specifically prohibited by the Commission, it does not affect the lessee's liability to injured third persons, and is an acceptable contractual arrangement between two freely contracting parties as to which of the two will ultimately bear the cost of damages done to a third party. It is suggested that the only argument against permitting such agreements is that the lessee, knowing that it does not have to pay damages, might be less careful in supervising and controlling the operation of the vehicle. Allstate Ins. Co. v. Alterman Transport Lines, Inc., supra. Also, that such provisions, if anything, provide additional security to the public. Allstate Ins. Co. v. General Fire & Cas. Co., supra. The practical and actual control of the equipment which is retained by the lessor is likewise found to be a reason for upholding an indemnity agreement contrary to the pertinent I.C.C. regulations. The rationale of these decisions is not convincing in light of the clear and unambiguous language of the regulations imposing complete responsibility upon the lessee and also in view of the fact that a basic purpose of the regulatory scheme was to assure that licensed carriers be responsible in fact, as well as in law, for the maintenance of the leased equipment and the supervision of its driver.
It has been determined that I.C.C. regulations have the force and effect of law and cannot be evaded by lease *297 provisions which attempt to exclude or limit their application. Cox v. Bond Transportation, Inc., 53 N.J. 186 (1969); Simmons v. King, supra. The indemnification clause in question clearly is an attempt to evade or avoid the provisions of the regulation as well as the authorizing statute, imposing "complete assumption of responsibility" upon the lessee and requiring the lessee to be "fully responsible" for the operation of the vehicle during the period of the lease.
The statutory and regulatory provisions leave no doubt as to the legislative and administrative intentions that full and complete responsibility in connection with the operation of the leased equipment be vested in the lessee. Permitting the shifting of some element of such responsibility by individual agreement logically could require approval of private arrangements as to other elements thereof. This would result in a subversion of the statute and regulations and make "short shrift of the spirit and intent" of these enactments.
The enforcement of the indemnity provision as sought by the lessee could result in adversely affecting the safety of the operation of the equipment, would permit the circumvention of the requirements of the I.C.C. pertaining to truck leasing, and inject uncertainties in the responsibilities of lessor and lessee with respect to the use of leased equipment. Public policy is better served by mandating compliance with the regulations.
We therefore conclude that the indemnification clause in the lease between Ranch and Navajo which imposes ultimate responsibility for the loss resulting from the operation of the leased vehicle contrary to the applicable I.C.C. regulations is unenforceable as being against the public policy expressed in those regulations.
Accordingly, judgment will be entered in favor of the third-party plaintiff.